IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

---

ATLANTIC CASUALTY INSURANCE )
COMPANY, )
       )
       **Plaintiff,** )
       )
v. )       **No. 11-2273-STA-dkv**
       )
CHEYENNE COUNTRY, )
KENNETH R. ROBERTS, )
DONALD SAMPLES, ROBERT DAVIS, )
JAMES McCLAIN, BENJAMIN L. )
MOUNT, AND TIFFANY SMITH, as )
the natural mother and representative of )
J.K.V., minor surviving son of )
HOWARD VIRGINIA, deceased, )
       )
       **Defendants.** )

---

### ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

---

Before the Court is Plaintiff Atlantic Casualty Insurance Company's Motion for Summary Judgment (D.E. # 37) filed on December 27, 2012.  Defendants have filed a joint response in opposition to Plaintiff's Motion, to which Plaintiff has replied.  For the reasons set forth below, Plaintiff's Motion is **GRANTED**.

### BACKGROUND

In this declaratory judgment action, the Plaintiff insurance company seeks a declaration that pursuant to a policy of insurance, Plaintiff is not liable to indemnify or defend certain Defendants in an underlying wrongful death lawsuit.  Plaintiff has named as Defendants in this case all of the

1

parties to the underlying wrongful death suit.  Plaintiff's Complaint requests the following relief: (1) a judgment declaring the rights, duties, and other legal relations between the parties to this suit; (2) a judgment declaring that Plaintiff is relieved of all duties and liabilities by reason of lack of insurance coverage to Defendants Cheyenne Country; Kenneth R. Roberts ("Roberts"); Donald Samples ("Samples"); Robert Davis ("Davis"); James McClain ("McClain"); and Benjamin L. Mount ("Mount"); and (3) an order restraining and prohibiting the Defendants, their attorneys and their agents from filing or prosecuting any action in any other court for insurance coverage for the incidents alleged in the underlying lawsuit.

## I.  The Underlying Lawsuit

The following facts are not in dispute for purposes of this Motion, unless otherwise noted. On January 14, 2011, Defendant Tiffany Smith brought suit against Defendants Cheyenne Country, Roberts, Davis, McClain, and Mount for the wrongful death of Howard Virginia ("Virginia") and personal injuries and losses to Virginia's minor son J.K.V., in the Circuit Court of Tennessee for the Thirtieth Judicial District at Memphis, Shelby County, Docket No. CT-000198- 11 ("the wrongful death suit" or "the underlying suit").  (Pls.' Statement of Facts ¶ 13.)   The underlying suit, styled *Tiffany Smith et al. v. Cheyenne Country et al.*,  was removed to the United States District Court for the Western District of Tennessee and filed as civil case no. 2:11-cv-02183-JPM-tmp.  (*Id.* ¶ 14.)

The complaint in the underlying suit made the following allegations.  On or about January 17, 2010, Howard Virginia was a customer at Cheyenne Country located at 1976 East Shelby Drive, in Memphis, Tennessee.  (*Id.* ¶ 15.)  At some point, Virginia was asked to leave Cheyenne Country

2

and did so without incident.  (*Id.* ¶ 16.)[1]  Virginia and his friends then returned to the bar to request their money back.  (*Id.* ¶ 17.)  Subsequently, an altercation ensued between Virginia and Davis, McClain, and Mount (collectively "Cheyenne Country security"). (*Id.*)  As Virginia struggled with Cheyenne Country security, Defendants Davis, McClain, and Mount physically struck Virginia and electrically shocked him with a stun gun or a similar dangerous instrumentality.  (*Id.* )  Cheyenne Country security subdued Virginia, took him into their custody, and called the Memphis Police Department. (*Id.* ¶ 19.) Cheyenne Country security and Kenneth R. Roberts, the owner of Cheyenne Country, held Virginia while they waited for the police to arrive.  (*Id.* ¶ 20.)  In the mean time, these Defendants left Virginia lying on the pavement face down and unattended.  (*Id.* ¶ 21.)  Virginia was bleeding from a head wound inflicted during the struggle, and his hands were bound behind his back with zip ties.  (*Id.*)  The complaint in the underlying suit alleges that after subduing Virginia, Cheyenne Country security and Roberts had every opportunity to safely monitor Virginia and that they nevertheless failed to monitor Virginia properly.  (*Id.* ¶¶ 22, 23.)  After the police arrived on the scene, one of the police officers observed that Virginia's chest did not appear to expand.  (*Id.* ¶ 24.)  The officer immediately cut the zip ties only to discover that Virginia was dead.  (*Id.*)

The underlying complaint goes on to allege the following in support of its legal theories.  The Complaint asserts that as a direct and proximate consequence of the Defendants' negligent conduct, Virginia was caused to suffer severe injuries which resulted in his death.  (*Id.* ¶ 25.)  The complaint

---

[1] Defendants do not dispute that this allegation is contained in the complaint in the underlying lawsuit.  Defendants simply deny that the allegation is true.  Defendants take the same position with respect to Plaintiff's Statement of Facts ¶¶ 17-25 and 27-31.  Because the Court's analysis in this suit is confined to the allegations (and not the undisputed facts) of the underlying complaint, it is enough that the parties do not dispute that the statements are found in the complaint.

further alleges upon information and belief that Virginia was still alive when Cheyenne Country security and Roberts took him into their custody. (*Id.* ¶ 26.) Virginia's death was proximately caused by the method and manner in which he was restrained. (*Id.* ¶ 27.) The complaint in the underlying suit alleges that Cheyenne Country security and Roberts acted in concert to apply deadly force to Virginia while using an inherently dangerous instrumentality. (*Id.* ¶ 28.) Specifically, the underlying complaint alleges on information and belief that Cheyenne Country security used an electric stun gun and applied it to Virginia's head, constituting a substantial risk of death or serious bodily injury. (*Id.* at ¶ 29.) The complaint further alleges that Cheyenne Country and Roberts failed to train security employees about the inherent dangers in the use and implementation of dangerous instrumentalities, such as stun guns and wrist restraints. (*Id.* at ¶ 30.) According to the pleadings, the implementation of dangerous instrumentalities together with negligent monitoring of Virginia's condition was the proximate cause of Howard Virginia's death. (*Id.* ¶ 31.)

## II. The Insurance Policy

On March 20, 2009, Plaintiff in the case at bar issued an insurance policy, Policy No. M170000031-0 ("the Policy"), naming as insureds Defendants Cheyenne Country, Kenneth R. Roberts, and Donald Samples, with a Policy Period from March 20, 2009 to March 20, 2010. (*Id.* ¶ 1.) Although Defendant Samples is listed on the Policy, Samples no longer has an ownership interest in Cheyenne Country, making Roberts the sole owner. (*Id.* ¶ 2.)[2] The Policy defines an "insured" to include an individual "designated in the Declarations" as well as the individual's spouse "but only with respect to the conduct of a business of which you are the sole owner . . . ." (*Id.* ¶ 6.) The Policy also defines an "employee" as an "insured" "but only for acts within the scope of their

---

[2] Samples is not a party to the underlying wrongful death suit.

4

employment by you or while performing duties related to conduct of your business" and adds that "none of these 'employees' is an insured for . . . 'bodily injury' . . . [a]rising out of his or her providing or failing to provide professional health services." (*Id.* ¶ 7.)  Pursuant to the "COVERAGE OF BODILY INJURY AND PROPERTY DAMAGE LIABILITY" section of the Policy, Plaintiff "will have no duty to defend the insured against any suit seeking damages for bodily injury or property damage to which this insurance does not apply." (*Id.* ¶ 3) (internal quotation marks omitted).[3]  The Policy defines "bodily injury" as "bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time." (*Id.* ¶ 8.)  This section of the Policy also provides that "this insurance applies to bodily injury and property damage only if the bodily injury or property damage is caused by an occurrence that takes place in the coverage territory." (*Id.* ¶ 4) (internal quotation marks and punctuation omitted).[4]    Endorsement No. AGL-056 1/08 to the Policy provides:

> **LIMITATION-DUTY TO DEFEND**
> Where there is no coverage under this policy, there is no duty to defend any insured. We are entitled to all rights of reimbursement from you or any insured or indemnitee for sums paid under this policy if it is determined that there is no coverage under the terms, conditions or exclusions of this policy.

(*Id.* ¶ 11.)

Endorsement No. AGL-046 Edition 1/08 provides:

---

[3] The Policy defines a "suit" to mean "a civil proceeding in which damages because of 'bodily injury,' 'property damage' or 'personal and advertising injury' to which this insurance applies are alleged" (*Id.* ¶ 10) and "damages because of bodily injury" to "include damages claimed by any person or organization for care, loss of services or death resulting at any time from the 'bodily injury.'" (*Id.* ¶ 5.)

[4] Under the Policy, an "occurrence" means "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." (*Id.* ¶ 9.)

**EXCLUSION - ASSAULT AND/OR BATTERY**

1. This insurance does not apply to and we have no duty to defend any claims or "suits" for "bodily injury", "property damage" or "personal and advertising injury"arising in whole or in part out of:

> a) the actual or threatened assault and/or battery whether caused by or at the instigation or direction of any insured, his employees, patrons or any other person;

> b) the failure of any insured or anyone else for whom any insured is legally responsible to prevent or suppress assault and/or battery;

> c) the negligent:

>> i) employment;
>> ii) investigation;
>> iii) supervision;
>> iv) training;
>> v) retention;

> of a person for whom any insured is or ever was legally responsible and whose conduct would be excluded by (a) or (b) above.

> d) any actual or alleged injury arising out of any combination of an assault and/or battery-related cause and a non-assault or battery-related cause;

> e) any actual or alleged injury arises [sic] out of a chain of events which includes assault and/or battery, regardless of whether the assault and/or battery is the initial precipitating event or a substantial cause of injury;

> f) any actual or alleged injury arises [sic] out of assault and/or battery as a concurrent cause of injury, regardless of whether the assault and/or battery is the proximate cause of injury, or

> g) claims arising out of, caused by, resulting from, or alleging, in whole or in part, any insured's failure to thwart, foil, avoid, hinder, stop, lessen or prevent any attack, fight, assault and/or battery, theft, or crime.

2. For the purposes of this endorsement, the words, "assault and/or battery" are intended to include, but are not limited to, sexual assault.

3. For the purposes of this endorsement, the words, "assault and/or battery" are intended

to include, but are not limited to, injury of any kind resulting from the use, or threatened use, of a gun, firearm, knife or weapon of any kind.

(*Id.* ¶ 12.)

In its Motion for Summary Judgment, Plaintiff argues that there are no genuine issues of fact as to the terms of the policy and the coverage it provided and specifically that the policy excluded coverage for the types of acts alleged in the underlying lawsuit.  Therefore, the Plaintiff insurance company is entitled to a declaratory judgment limiting its duty to defend or indemnify any insureds covered by the policy.  Plaintiff begins by asserting that the Court should look at the well-pleaded factual allegations of the underlying lawsuit to determine whether the claims alleged there are of a kind excluded from coverage under the terms of the policy.  Plaintiff contends that all of the allegations in the underlying lawsuit fall within the exclusion for incidents of assault and battery. For example, any allegations that Defendant Cheyenne Country's employees used a stun gun on Virginia would fall under the policy exclusion for assault and battery involving the use of a gun or "weapon of any kind."  Likewise, any claim that Defendant Cheyenne Country was negligent in the training or supervision of its employees also falls under a policy exclusion.  Plaintiff further argues that Tennessee's concurrent cause doctrine does not apply in this case because all of the causes pleaded in the underlying lawsuit are covered by a policy exclusion.  Therefore, Plaintiff contends that it is entitled to a declaratory judgment relieving it of any duty to defend or indemnify any insured that is a party to the underlying wrongful death suit.

In their joint response in opposition to Plaintiff's Motion for Summary Judgment, Defendants assert that summary judgment is not proper.  Defendants argue that none of the allegations in the underlying complaint suggest that Cheyenne Country or its employees committed

a battery against Howard Virginia.  Defendants state that under Tennessee law a battery is "a touching of the person or something intimately associated with, or attached to, his person for an unlawful purpose."[5]  Defendants state that in the underlying lawsuit, "[t]here are no allegations that the Cheyenne security Defendants used any unlawful or excessive force in their confrontation with Mr. Virginia."[6]  As a result, the policy's exclusion for assault and battery would not apply.  Second, Defendants rely on another provision of the policy which reads,

> 2. EXCLUSIONS
>
> This policy does not apply to:
>
> > a) Expected or Intended Injury
> >
> > "Bodily injury" or "property damage" expected or intended from the standpoint of the insured.  This exclusion does not apply to "bodily injury" resulting from the use of reasonable force to protect person or property.

Defendants contend that this is an exception to the policy's assault and battery exclusion and that this exception applies to the facts alleged in the underlying complaint.  Defendants seem to argue that the Cheyenne Country Defendants used reasonable force to protect person or property by subduing Virginia and that the actions of these Defendants "were justified."[7]  Defendants reiterate that the underlying wrongful death suit does not allege an assault and battery against Virginia.

---

[5] Defs.' Jt. Resp. in Opp'n 7 (quoting *Nolan v. Memphis City Sch.*, 589 F.3d 257 (6th Cir. 2009)).

[6] *Id.* The Court finds this particular statement curious in light of the fact that the underlying wrongful death suit alleges in part that a proximate cause of Virginia's death was the use of a stun gun to his head.

[7] Defs.' Jt. Resp. in Opp'n 9 ("The Cheyenne security Defendants' actions were justified. . . .").

Rather, the complaint in the underlying suit alleges claims sounding in negligence.  Finally, Defendants address the concurrent cause doctrine and argue that it applies to the coverage dispute presented here.  According to Defendants, even if the assault and battery exclusion applies to some of the allegations in the underlying case, other allegations, particularly the contention that Cheyenne Country defendants negligently failed to monitor Virginia, are not excluded.  Thus, the concurrent cause doctrine applies here and requires Plaintiff to defend and indemnify all of the claims against the Cheyenne Country defendants.

Plaintiff has filed a reply brief addressing the arguments raised in Defendants' response.  First, Plaintiff argues that the Court should disregard the affidavits some Defendants provided with the joint response brief.  The Court need only look to the allegations of the complaint in the underlying wrongful death suit to determine whether coverage applies.  Second, Plaintiff responds that under Tennessee law, a touching for an "unlawful purpose" is not an element of a civil claim for battery.  It follows that the Court should reject Defendants' argument that the Cheyenne Country defendants restrained Virginia for a lawful purpose and so did not actually commit a battery.  Also, Plaintiff argues that an assault and battery committed against Virginia is "at the heart of the [underlying] complaint."  The wrongful death pleadings allege that Virginia was physically struck, shocked with a stun gun, and was bleeding from a head wound inflicted during the struggle.  As for the "expected and intended acts" exception Defendants cite, Plaintiff points out that a subsequent endorsement to the policy modified the language of the exception and it now reads, "Exclusion 2.a. of the Commercial Liability Coverage Form is deleted in its entirety and replaced by the following:

a) "Bodily Injury" or "Property Damage" expected or intended from the standpoint of any insured.

Finally, Plaintiff argues that the policy exclusions have essentially written Tennessee's concurrent cause doctrine out of the policy. The policy excludes coverage for "any actual or alleged injury aris[ing] out of assault and/or battery as a concurrent cause of injury, regardless of whether the assault and/or battery is the proximate cause of injury." Therefore, the concurrent cause doctrine does not apply here.

## STANDARD OF REVIEW

Federal Rule of Civil Procedure 56(a) provides that a party is entitled to summary judgment if the moving part "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.[8] In reviewing a motion for summary judgment, the evidence must be viewed in the light most favorable to the nonmoving party.[9] When the motion is supported by documentary proof such as depositions and affidavits, the nonmoving party may not rest on his pleadings but, rather, must present some "specific facts showing that there is a genuine issue for trial."[10] It is not sufficient "simply [to] show that there is some metaphysical doubt as to the material facts."[11] These facts must be more than a scintilla of evidence and must meet the standard of whether a reasonable juror could find by a preponderance of the evidence that the nonmoving party is entitled to a verdict.[12] When determining if summary judgment is appropriate, the Court should

---

[8] Fed. R. Civ. P. 56(a); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Canderm Pharmacal, Ltd. v. Elder Pharms, Inc.*, 862 F.2d 597, 601 (6th Cir. 1988).

[9] *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

[10] *Celotex*, 477 U.S. at 324.

[11] *Matsushita*, 475 U.S. at 586.

[12] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).

ask "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-side that one party must prevail as a matter of law."[13]

Summary judgment must be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."[14]  In this Circuit, "this requires the nonmoving party to 'put up or shut up' [on] the critical issues of [her] asserted causes of action."[15]  Finally, the "judge may not make credibility determinations or weigh the evidence."[16]

## ANALYSIS

The Court holds that coverage for the claims pleaded in the underlying wrongful death suit are excluded under the terms of the commercial liability insurance policy at issue here.  Because the policy does not provide coverage for the acts alleged in the wrongful death suit, Plaintiff has no duty to defend or indemnify its insureds named as defendants in the wrongful death suit.  Therefore, Plaintiff's Motion for Summary Judgment must be granted.

## I.  The Allegations of the Underlying Complaint

Before construing the terms of the insurance contract, the Court will review the pleadings of the underlying suit.  The Tennessee Supreme Court has held that "[t]he obligation of a liability insurance company to defend an action brought against the insured by a third party is to be

---

[13] *Id*. at 251-52.

[14] *Celotex*, 477 U.S. at 322.

[15] *Lord v. Saratoga Capital, Inc.*, 920 F. Supp. 840, 847 (W.D. Tenn. 1995) (citing *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1478 (6th Cir. 1989)).

[16] *Ohio Citizen Action v. City of Englewood*, 671 F.3d 564, 569 (6th Cir. 2012); *Adams v. Metiva*, 31 F.3d 375, 379 (6th Cir. 1994).

determined *solely* by the allegations contained in the complaint in that action."[17]   Analysis of the underlying pleadings is relevant to an insurance company's duty to defend because the duty to defend is broader than the duty to indemnify and "is based exclusively on the facts as *alleged* rather than on the facts as they actually are."[18]   Based on these principles for analyzing an insurer's duty to defend, the Court's initial task is determine what fact allegations and legal claims are contained in the underlying complaint for wrongful death.   Here, the fact pleadings allege that the decedent Howard Virginia became involved in an "altercation" with three men working as security at Cheyenne Country.[19]   During the "altercation," Virginia "struggled" with security, was "physically struck," and eventually "electrically shocked" with a stun gun.[20]   As a consequence of the "altercation," Virginia was subdued with his hands bound behind him and left lying on the ground as he bled "from a head wound inflicted during the struggle."[21]

In support of the negligence theories articulated in the wrongful death complaint, the pleadings allege that use of the stun gun and the negligent failure of the Cheyenne Country employees to monitor Virginia after the altercation  "was the proximate cause" of his death.[22]   More

---

[17] *St. Paul Fire & Marine Ins. Co. v. Torpoco*, 879 S.W.2d 831, 834–35 (Tenn. 1994) (emphasis in original) (quoting *Am. Policyholders' Ins. Co. v. Cumberland Cold Storage Co.*, 373 A.2d 247 (Me. 1977)).

[18] *Id.* at 835 (emphasis in original) ("Thus it is not uncommon that an insurer will have a duty to defend based on the allegations in the complaint, yet have no subsequent duty to indemnify the insured.").

[19] Compl., ex. A, ¶ 15 (D.E. # 1-9).

[20] *Id.* ¶ 16.

[21] *Id.* ¶ 19.

[22] *Id.* ¶ 29.

specifically, the complaint alleges that the individuals defendants were negligent in the way in which they (1) used the stun gun,[23] (2) handled and monitored Virginia after he was subdued;[24] (3) failed to provide care or treatment to Virginia;[25] (4) failed to monitor Virginia's breathing;[26] (5) failed to assess the seriousness of Virginia's medical condition;[27] (6) failed to prevent Virginia's death while he was in their custody and dependent on them;[28] and (7) failed to request medical aid for Virginia in a timely fashion.[29] With respect to Cheyenne Country, the wrongful death complaint contends that Cheyenne Country through its employees and agents was also negligent in that it (1) failed to train its employees in handling persons similarly situated to Virginia;[30] (2) failed to train its employees in using dangerous instrumentalities;[31] (3) failed to act reasonably in hiring, training and retaining the individuals named as defendants in the suit; [32] and (4) failed to promulgate and enforce rules and regulations to ensure its employees and customers were reasonably safe.[33]   Additionally, the

---

[23] *Id.* ¶ 31b.

[24] *Id.* ¶ 31c-d.

[25] *Id.* ¶ 31e.

[26] *Id.* ¶ 31f.

[27] *Id.* ¶ 31g.

[28] *Id.* ¶ 31h.

[29] *Id.* ¶ 31i.

[30] *Id.* ¶ 35b.

[31] *Id.* ¶ 35c.

[32] *Id.* ¶ 35d.

[33] *Id.*

complaint alleges that Cheyenne Country is vicariously liable for the negligent acts and omissions of its employees and agents.[34] The wrongful death complaint alleges that all of these negligent acts and omissions were the proximate cause of Virginia's death.

## II. Coverage Under the Liability Policy

Having set forth the allegations of the underlying wrongful death complaint, the Court now turns to the terms of commercial liability insurance policy covering Cheyenne Country and the other insureds named in the policy. The issue presented is whether the policy provides coverage for the types of acts and omissions alleged in the wrongful death suit. If so, then Plaintiff has a duty to defend any party named as an insured in the policy. If the policy does not provide coverage, then Plaintiff has no duty to defend and therefore no duty to indemnify any insured who might be found liable in the underlying wrongful death suit.[35]

The parties in this case agree that Tennessee substantive law governs their dispute, including the meaning of their commercial liability insurance policy. Under Tennessee law general principles of contract construction apply to the construction of an insurance contract.[36] The construction of a

---

[34] *Id.* ¶¶ 36–38. The wrongful death complaint lists these allegations under a heading that reads as follows: "Count III Vicarious Liability of Defendant Cheyenne Country." Even though these allegations are described as "Count III," the next heading in the complaint reads "Fifth Cause of Action - Negligence of Defendant Cheyenne Country." There is no "Count IV" or "Fourth Cause of Action" in the pleadings. Additionally, the "Fifth Cause of Action"simply repeats the allegations of paragraphs 1 through 35 and alleges that "Defendant Cheyenne Country failed in the above mentioned duties and was therefore negligent" and that "Cheyenne Country's negligence was the direct and proximate cause of Decedent' injuries including but not limited to his subsequent death." *Id.* ¶¶ 39–41.

[35] The policy specifies that "[w]here there is no coverage under this policy, there is no duty to defend any insured." Compl., ex. B, 36 (D.E. # 1-10).

[36] *Travelers Indem. Co. of Am. v. Moore & Assocs., Inc.,* 216 S.W.3d 302, 305 (Tenn. 2007); *McKimm v. Bell*, 790 S.W.2d 526, 527 (Tenn. 1990).

contract presents a question of law, making such issues proper for summary judgment.[37]  Courts determining the terms of a contract are to ascertain the intent of the parties based on the ordinary and natural meaning of the words used in the instrument.[38]  If the terms used in the instrument are ambiguous, however, the court must then resort to rules of construction.  Terms are not ambiguous merely because the parties disagree as to the interpretation of a given clause.[39]  "A contract is ambiguous only when it is of uncertain meaning and may fairly be understood in more ways than one."[40]  A court must consider the entire contract in construing any or all of its parts.[41]  This means that "a contract must be viewed from beginning to end, and all its terms must pass in review, for one clause may modify, limit, or illuminate another."[42]

In the specific context of an insurance policy or contract,  the determination of the scope of insurance coverage is also an issue of law for the court.[43]  Where the court finds that a term in an

---

[37] *Guiliano v. Cleo, Inc.*, 995 S.W.2d 88, 95 (Tenn. 1999); *Toomey v. Atyoe*, 32 S.W. 254, 256 (Tenn. 1895); *Manley v. Plasti-Line, Inc.*, 808 F.2d 468, 471 (6th Cir. 1987).  *See also* 10B Charles Alan Wright, Arthur R. Miller, & Mary Kay Kane, *Federal Practice & Procedure* § 2730.1 (3d ed. 2009) ("The legal effect or construction of a contract is a question of law that properly may be determined on a summary-judgment motion when the parties' intentions are not in issue.").

[38] *Guiliano*, 995 S.W.2d at 95.

[39] *Cookeville Gynecology & Obstetrics, P.C. v. Se. Data Sys., Inc.,* 884 S.W.2d 458, 462 (Tenn. Ct. App. 1994).

[40] *Farmers-Peoples Bank v. Clemmer,* 519 S.W.2d 801, 805 (Tenn. 1975).

[41] *Cocke Cnty. Bd. of Highway Cmm'rs. v. Newport Util. Bd.*, 690 S.W.2d 231, 237 (Tenn. 1985).

[42] *Id.*

[43] *U.S. Bank, N.A. v. Tenn. Farmers Mut. Ins. Co.,* 277 S.W.3d 381, 386 (Tenn. 2009).

15

insurance policy is ambiguous, the term "must be construed strongly against the insurer and in favor of the insured."[44]  This principle applies specifically to "exceptions, exclusions and limitations in insurance policies" which "must be construed against the insurance company and in favor of the insured."[45]  Nevertheless, Tennessee's "well recognized rule of construing language of an insurance policy most strongly against the insurance company does not permit or cause the Court to create ambiguity where none exists."[46]

The Court finds that the relevant terms of the liability policy are clear and unambiguous in this case.  First, there is no dispute that Cheyenne Country and the individuals named as defendants in the underlying suit are covered "insureds" under the terms of the policy.  Cheyenne Country and its owner Kenneth Roberts are named as insureds on the policy's declarations page.[47]  The policy also defines an "insured" to include any employees "for acts within the scope of their employment by you or while performing duties related to conduct of your business."[48]  The underlying suit alleges

---

[44] *Travelers Ins. Co. v. Aetna Cas. & Sur. Co.*, 491 S.W.2d 363, 366 (Tenn. 1976).

[45] *Allstate Ins. Co. v. Watts,* 811 S.W.2d 883, 886 (Tenn. 1991).

[46] *Harvey v. Farmers Ins. Exchange*, 286 S.W.3d 298, 302–303 (Tenn. Ct. App. 2008); *Wellmont Health Sys. v. Qualls*, No. E2009-00918-COA-R3-CV, 2010 WL 3294112, at *4 (Tenn. Ct. App. Aug. 20, 2010) ("Exclusionary clauses are not to be construed broadly in favor of the insurer . . . . However, neither should they be construed so narrowly so as to defeat their evident purpose.").

[47] Compl., ex. B, 4 (D.E. # 1-10).

[48] *Id.* at 41.  This same rider to the policy states that employees are not insureds for bodily injuries "arising out of his or her providing or failing to provide professional health services."  *Id.* Plaintiff has cited this term in the Motion for Summary Judgment but has not argued that the individual employees named in the wrongful death suit would have or could have provided professional health care services to Virginia.  Because the Court finds that coverage was excluded under the policy for the acts and omissions alleged in the underlying suit, the Court need not reach the issue of whether Cheyenne Country's employees failed to provide Virginia

16

that the individual defendants were employees of Cheyenne Country and that they acted in their capacity as security for the business at all relevant times during their encounter with Howard Virginia.  Therefore, the Court holds that the defendants in the wrongful death suit are "insureds" under the terms of the liability policy.

Second, the Court holds that the policy provides liability coverage for certain kinds of "bodily injury" but with some exclusions.  Generally speaking, the policy covers "bodily injury," which is defined to mean "bodily injury, sickness, or disease sustained by a person, including death resulting from any of these at any time" that occurs under specified conditions.[49]  In order for a bodily injury to be covered, the bodily injury must be caused by an "occurrence" that takes place in the coverage territory during the policy period.[50]  Elsewhere, the policy defines an "occurrence" to mean "an accident, including continuous or repeated exposure to substantially the same general harmful conditions."[51]  It appears to be undisputed at this stage of the case that the events alleged in the wrongful death complaint, including the Cheyenne Country defendants' negligence, constitute an "occurrence" and that the injury took place in the coverage territory during the policy period.  Thus, the parties appear to agree that Virginia suffered "bodily injury," as the policy defines the term.

At the same time, the policy contains an endorsement titled "Exclusion - Assault and/or Battery," which states that "the insurance does not apply to and we have no duty to defend any

---

with "professional health care services."

[49] *Id.* at 26.

[50] *Id.* at 16.

[51] *Id.* at 28.

17

claims or suits for bodily injury . . . arising in whole or in part out of" specified acts of assault and battery.[52]  The endorsement goes on to list a series of situations involving "assault and/or battery" in which coverage is excluded.  For example, coverage is excluded for an "actual or threatened assault and/or battery" committed by any person, including an insured, as well as for an insured's failure to prevent an "assault and/or battery."  The policy also excludes coverage for the negligent employment, investigation, supervision, training, or retention of a person "for whom any insured is or ever was legally responsible" and who committed an "assault and/or battery" or failed to prevent an "assault and/or battery."  The policy, however, does not actually define the terms "assault" or "battery."  Therefore, the Court now must arrive at what the parties intended by these terms.[53]

## A.  "Battery" Defined

One of the dispositive issues presented in this case is whether the conduct alleged in the wrongful death complaint constitutes a "battery."  The parties sharply disagree over whether the facts alleged in the underlying suit meet the definition of "battery."  Both parties base their arguments on the common law definition of this term.  Defendants contend that under Tennessee law, a battery is "a touching of the person or something intimately associated with, or attached to, his person for an unlawful purpose."  According to Defendants, the underlying suit does not allege that the Cheyenne Country defendants unlawfully touched Virginia, and so the Court should hold that there is no allegation of battery in the wrongful death suit and the policy's assault-and-battery exclusion does not apply.  Plaintiff cites other authority defining "battery" in a similar manner yet omitting the

---

[52] Compl., ex. B, 43 (D.E. # 1-10).

[53] *Guiliano*, 995 S.W.2d at 95.

"unlawful purpose" element.  Plaintiff maintains that even if the complaint does not allege a tort claim for battery, the gravamen of the wrongful death suit is that the Cheyenne Country defendants committed a battery against Howard Virginia.  Thus, the Court should hold that the assault-and-battery exclusion does apply.  The Court observes that other courts applying Tennessee law have defined the elements of the common law tort of battery in varying ways.  For example, it is true that the Sixth Circuit has defined "battery" under Tennessee law to mean "a touching of the person [of an individual] or something intimately associated with, or attached to, his person for an unlawful purpose."[54]  It is also true that in other cases "battery" is defined to mean "an intentional act that causes an unpermitted, harmful or offensive bodily contact."[55]  Other courts have cast the elements of the tort of battery in ways different still.[56]  In the final analysis, this Court's task for purposes of summary judgment is to ascertain the intent of the parties based on the ordinary and natural meaning of the word "battery" as it is used in the policy, which would not necessarily be limited to its meaning at law.

Even so, the ordinary dictionary definitions of the word arguably do not resolve the question

[54] *Nolan v. Memphis City Sch.*, 589 F.3d 257, 265 (6th Cir. 2009) (quoting *Lewis v. Metro. Gen. Sessions Ct. for Nashville,* 949 S.W.2d 696, 703 (Tenn. Crim. App. 1996) and *Huffman v. State,* 292 S.W.2d 738, 742 (Tenn. 1956)).

[55] *Doe v. Mama Taori's Premium Pizzeria, LLC*, No. M1998-00992-COA-R9-CV, 2001 WL 327906, at *4 (Tenn. Ct. App. Apr. 5, 2001).

[56] *Dillingham v. Millsaps*, 809 F. Supp. 2d 820, 855 (E.D. Tenn. 2011) ("In Tennessee, battery is defined as "'any intentional, unlawful and harmful (or offensive) contact by one person with the person of another.'") (citation omitted).  *Lee v. Metro. Gov't of Nashville and Davidson Cnty.*, 596 F. Supp. 2d 1101, 1113–14 (M.D. Tenn. 2009) ("To establish a claim for state-law battery in Tennessee, the plaintiff must show that the defendant, without privilege and by 'conscious and volitional act,' committed an unlawful, harmful, or offensive touching against the complaining party or its representative.") (citing *City of Mason v. Banks,* 581 S.W.2d 621, 626 (Tenn. 1979)).

or point to a single clear and unambiguous construction of the word "battery." In one of its ordinary and natural senses, "battery" can mean simply "the act of battering or beating."[57] The fact pleadings in the underlying complaint would easily meet this definition where the complaint alleges that Howard Virginia was in an "altercation" and a "struggle" that resulted in part in his receiving a bleeding head wound. Reasonable minds could not differ over whether these allegations describe "the act of battering or beating." By the same token, a battery can be understood to mean "the unlawful beating of another including every willful, angry and violent, or negligent unlawful touching of another's person, clothes or anything attached to his person or held by him."[58] Like the common law definitions of "battery," this ordinary understanding of the word goes beyond a simple "act of beating" and invites additional consideration of what is meant by other terms such as "unlawful," "willful," and "negligent." More to the point, this definition of "battery" would inevitably require the Court to consider whether under the facts alleged in the underlying complaint the beating or touching of Howard Virginia was "unlawful."[59] In short, regardless of whether the

---

[57] Merriam-Webster's Third Int'l Dictionary (Unabridged) 187 (2002 ed.).

[58] *Id.*

[59] There is authority for the proposition that a business owner may use reasonable force to remove an invitee who has had his permission to be on the premises revoked. *Penn-Star Ins. Co. v. Griffey*, 306 S.W.3d 591, 599–600 (Mo. Ct. App. 2010) (citing 6A C.J.S. *Assault* § 32 (2004). Even though the business owner must normally ask the invitee to leave and allow the invitee a chance to leave, situations exist where it might be useless or dangerous to wait for the person to leave voluntarily. *Id.* Under certain circumstances, a duty may arise for the business owner to eject an invitee or face liability for failing to act. *Id.* (citing *Tavernkeeper's Liability to Patron for Third Person's Assault,* 43 A.L.R.4th 281, sections 3 [a]–8[b] (1986). *See also Calif. v. Hodari D.*, 499 U.S. 621, 631 n.6 (1991) (Stevens, J., dissenting) ("One who undertakes to make an arrest without lawful authority, or who attempts to do so in an unlawful manner, is guilty of an assault if the other is ordered to submit to the asserted authority, is guilty of battery if he lays hands on the other for this unlawful purpose . . . .").

Court construes the word in light of its meaning at common law or its common dictionary definitions, the term "battery" as it is used in the policy's assault-and-battery exclusion is arguably ambiguous because it may fairly be understood in more ways than one.  Under the circumstances, the Court's task would be to construe the ambiguous term "battery" "strongly against the insurer and in favor of the insured,"[60] even more so because the policy uses the term "battery" in an endorsement excluding coverage.[61]

However, the Court need not reach the issue of how to construe the ordinary and natural meaning of the term "battery" based only on the common definitions of the term.  It is well-settled that courts "must consider the entire contract in construing any or all of its parts"[62] meaning "a contract must be viewed from beginning to end, and all its terms must pass in review, for one clause may modify, limit, or illuminate another."[63]  In the policy at issue here, another portion of the assault-and-battery exclusion sets forth a specific example of "battery," which the Court finds relevant under the facts alleged in the underlying case.  Although the policy's assault-and-battery exclusion does not specifically define the term "battery," it does go on to state that "[f]or the purposes of this endorsement, the words, 'assault and/or battery' are intended to include, but are not limited to, injury of any kind resulting from the use, or threatened use, of a gun, firearm, knife or

---

The Court finds that these additional considerations simply highlight the conclusion that construction of "unlawful touching" or "unlawful beating" involves a fact-intensive analysis, which may result in the terms being fairly understood in more ways than one.

[60] *Travelers Ins.*, 491 S.W.2d at 366.

[61] *Watts*, 811 S.W.2d at 886.

[62] *Newport Util. Bd.*, 690 S.W.2d at 237.

[63] *Id.*

weapon of any kind."[64]  The Court finds this provision to be clear and unambiguous.  Giving this clause its ordinary and natural meaning, the Court holds that the parties to the contract intended that "battery" include "injury of any kind resulting from the use . . . of a . . . weapon of any kind." Arguably this definition of "battery" is more expansive than the other definitions of the term the Court has considered up to this point in its analysis.  For example, this provision does not require that an "offensive touching" resulting from the use of a weapon actually be "unlawful" in order to constitute "battery" or that the use of the weapon even be intentional.  In this way, the provision goes well beyond the common legal definition of "battery."  Nevertheless, this clear and unambiguous definition of "battery" controls in this case.

## B.  Use of the Stun Gun

Taking the exclusion's definition of "battery" to include the use of "a weapon of any kind" and applying that definition to the facts alleged in the wrongful death suit, the Court holds that the underlying complaint has alleged a "battery."  Specifically, the underlying complaint alleges that the Cheyenne Country defendants negligently used a stun gun or a "similar dangerous instrumentality" on Howard Virginia[65] and that their negligent use of the stun gun was a proximate cause of Virginia's death.[66]  The policy refers to the use of a "weapon of any kind" as "battery."  A "weapon" is commonly defined and understood to mean, "an instrument of offensive or defensive combat; something to fight with."[67]  Based on this definition, the Court finds that a "weapon of any kind"

---

[64] Compl., ex. B, 43 (D.E. # 1-10).

[65] Compl., ex. A, ¶ 16, 31b.

[66] *Id.* ¶ 29.

[67] Merriam-Webster's Third Int'l Dictionary (Unabridged) 2589 (2002 ed.).

22

includes a "stun gun," an article defined as "a weapon designed to stun or immobilize (as by electric shock) rather than kill or injure the one affected."[68]  Likewise, the underlying complaint's reference to a "similar dangerous instrumentality" suggests some article similar in design and purpose to a "stun gun."  In either case, the Court holds that the wrongful death suit alleges that the Cheyenne Country defendants negligently used a "weapon of any kind" against Virginia, and the use of a "weapon of any kind" constitutes a "battery" under the terms of the policy.

Having established that the wrongful death suit alleges a "battery," it is clear that the exclusion for assault-and-battery applies to the allegations of negligence owing to the use of the stun gun.  As the Court has already discussed, the assault-and-battery exclusion states that "the insurance does not apply to and we have no duty to defend any claims or suits for bodily injury . . . arising in whole or in part out of" an "actual . . . assault and/or battery."[69]  Put another way, the policy excludes coverage and relieves Plaintiff of any duty to defend a claim for injuries resulting from the actual use of a weapon of any kind such as a stun gun.  The use of the weapon includes use by an insured such as the Cheyenne Country defendants named in the wrongful death suit.  Construing all of the terms together, the alleged use of the stun gun was an "actual . . .battery" committed by an insured, one of the Cheyenne Country defendants.  Therefore, the Court holds that the commercial liability insurance policy does not apply to any claim against these parties related to the negligent use of the stun gun, and so Plaintiff has no duty to defend these claims.

Defendants have argued that the underlying wrongful death suit carefully alleges claims

---

[68] Merriam–Webster Online Dictionary, http://www.merriamwebster.com/dictionary/stun%20gun (last visited Apr. 20, 2012).

[69] Compl., ex. B, 43 (D.E. # 1-10).

sounding in negligence, and not a claim for battery or any other intentional tort. For this reason, the Court should rule that the assault-and-battery exclusion does not apply to limit coverage. Unfortunately, the Court finds Defendants' argument to be unavailing. First, the policy itself defines "battery" to include the "use" of a "weapon of any kind." The parties' intended definition of "battery" is so broad as to include not just an "unlawful touching" but also the intentional or even negligent use of a weapon. Therefore, the fact that the underlying pleadings state their claims in terms of the negligent use of the stun gun does not alter the result that coverage does not apply. Second, the Court finds that the outcome of each coverage dispute involving an assault-and-battery exclusion necessarily turns on the specific policy language at issue and the myriad factual scenarios presented, and not just the labels used in the underlying pleadings. It is not surprising then that courts have differed over whether an assault-and-battery exclusion in a commercial liability policy would also exclude coverage for related negligence claims. Many courts have held that the use of physical force constituting a "battery" relieved an insurer of its duty to defend claims against its insured, even if the underlying complaint pleaded other theories like negligence.[70] Other courts have held that allegations of negligence occurring after an alleged assault and battery were not excluded from coverage under a liability policy.[71] One case applying Tennessee law is representative. In a

---

[70] *E.g. Essex Ins. Co. v. Yi*, 795 F. Supp. 319, 321–24 (N.D. Cal. 1992); *Terra Nova Ins. Co. v. Nanticoke Pines, Ltd.* 743 F. Supp. 293, 294, 297–98 (D. Del. 1990); *St. Paul Surplus Lines Ins. Co. v. 1401 Dixon's, Inc.*, 582 F. Supp. 865, 866–67 (E.D. Penn. 1984); *Colter v. Spanky's Doll House*, No. 21111, 2006 WL 235045, at *5–7 (Ohio Ct. App. Jan. 27, 2006); *Krause v. W. Heritage Ins. Co.*, 2010 WL 2993991, 13 -14 (Cal.App. 4 Dist.,2010).

[71] *Am. Best Food, Inc. v. Alea London, Ltd.*, 229 P.3d 693, 694 (Wash. 2010); *Griffey*, 306 S.W.3d at 599–600; *QBE Ins. Corp. v. M & S Landis Corp.* 915 A.2d 1222, 1224–25, 1228–29 (Super. Ct. Pa. 2007); *W. Heritage v. Estate of Dean*, 55 F. Supp. 2d 646, 647–52 (E.D. Tex. 1998).

negligence suit involving a shooting at a motel, the United States District Court for the Middle District of Tennessee concluded that there was no duty to defend negligence claims based on the shooting where a policy's assault-and-battery provision excluded coverage for an injury "arising out of assault or battery, or out of any act or omission in connection with assault or battery, or with the prevention or suppression of an assault or battery."[72]  This holding illustrates the point that the outcome of each coverage dispute is dependent on the precise policy language and the facts of the underlying claim against an insured, in some cases regardless of how the plaintiff in an underlying suit has labeled his or her claims.  Therefore, the fact that the underlying complaint alleges negligence and not battery is not dispositive in this case.

Having held that the facts pleaded in the underlying suit about the use of a stun gun meet the policy's definition of "battery," the Court concludes that the policy provides no coverage for these claims against the individual defendants for the actual use of the stun gun, and Plaintiff has no duty to defend them as to these claims.  The Court's inquiry does not stop here, however.  The underlying complaint actually states several negligence theories against the individual defendants as well as against Cheyenne Country itself.  In cases involving a dispute over liability insurance coverage, Tennessee follows the concurrent cause doctrine, which finds liability coverage in cases where a "nonexcluded cause is a substantial factor in producing the damage or injury, even though an excluded cause may have contributed in some form to the ultimate result and, standing alone, would have properly invoked the exclusion contained in the policy."[73]  In other words, this Court must

---

[72] *Certain Underwriters at Lloyds, London Subscribing to Policy No. LCL002439, Syndicate 4444 v. Patel*, No. 3:10-cv-00958, 2011 WL 2182445, at *9 (M.D. Tenn. June 3, 2011).

[73] *Allstate Ins. Co. v. Watts,* 811 S.W.2d 883, 887 (Tenn. 1991).

consider whether the underlying suit has alleged another cause, besides the use of the stun gun, as a substantial factor in Howard Virginia's injuries, and if so, whether the policy also excludes coverage for the other substantial causes. If coverage is not excluded, then the policy will cover all of the claims and obligate Plaintiff to provide a defense in the underlying suit. Therefore, before the Court can decide that Plaintiff is entitled to judgment as a matter of law on the stun gun claim, the Court must consider whether other negligence claims alleged in the wrongful death suit are concurrent causes of the injuries of Howard Virginia and if so whether coverage for these claims is also excluded.

## C. Remaining Negligence Claims Against the Individual Defendants

The wrongful death complaint alleges that in addition to their negligent use of the stun gun, the individual defendants were negligent in several other respects, including their failure to monitor the medical condition or attend to the medical needs of Virginia after he was subdued. As previously noted, count I of the complaint alleges that these acts of negligence were, together with the use of the stun gun, a proximate cause of the injuries and death of Virginia. The Court finds that these defendants' other acts of negligence then are concurrent causes of the injuries and death of Virginia. If the policy does not exclude coverage for the other acts of negligence, then Plaintiff will have a duty to defend its insureds.

The Court holds that based on other provisions of the assault-and-battery exclusion, the policy also excludes coverage for the other negligent acts of the individual defendants. First, the relevant portion of the exclusion states that the policy does not apply to "any actual or alleged injuries aris[ing] out of any combination of an assault and/or battery-related cause and a non-assault

26

or battery-related cause"[74]   This exclusionary provision applies under the facts alleged in the underlying complaint.  The use of the stun gun is the "assault and/or battery-related cause."  The Court has already concluded that the allegations about the use of the stun gun meet the exclusion's definition of a "battery" and that the use of the stun gun was allegedly a proximate cause of Virginia's injuries and death.  The Court construes "non-assault or battery-related cause" to mean almost any act, intentional or negligent, which cannot be considered an "assault" or "battery" and yet which nevertheless works to produce an injury.   The other acts of negligence alleged in this case, including the defendants' failure to monitor Virginia's breathing and the seriousness of his condition and failure to provide medical treatment, meet the assault-and-battery exclusion's far-reaching definition of a "non-assault or battery-related cause."  The complaint alleges that a combination of the negligent use of the stun gun and the negligent failure to assess Virginia's condition after the altercation were the proximate causes of his injuries and death.  Construing the policy language in light of the facts alleged, the Court concludes that there is no coverage for the alleged injuries to Virginia arising out of the combination of the use of the stun gun and the failure to meet Virginia's medical needs after the altercation.[75]

---

[74] Compl., ex. B, 43 (D.E. # 1-10).

[75] The Court would stress that this exclusion is quite broad and that other courts to have considered coverage disputes involving the same exclusionary language have held that this language excludes coverage for negligent acts occurring in combination with acts of assault and battery.  *See 101 Ocean Condo. Homeowners Ass'n v. Century Sur. Co.*, 407 F. App'x 129, 131 (9th Cir. 2010) (holding that insurer had no duty to defend false imprisonment claim because policy excluded coverage for "any actual or alleged injury aris[ing] out of any combination of an assault or battery-related cause and a non-assault or battery-related cause"); *Century Sur. Co. v. Ken Barr, LLC*, No. 5:07-CV-70-R, 2009 WL 260-2809, at *4 (W.D. Ky. Aug. 24, 2009) (holding that claim for negligent hiring was excluded under identical assault-and-battery exclusion); *Sanford v. Century Sur. Co.*, No. 2:07cv253-KS-MTP, 2008 WL 879704, at * 4 (S.D. Miss. Mar. 28, 2008) ("The two [exclusions] combine to exclude any actions where negligence

In the alternative, the exclusion denies coverage for "any actual or alleged injury aris[ing] out of assault and/or battery as a concurrent cause of injury, regardless of whether the assault and/or battery is the proximate cause of injury."  For some of the same reasons already discussed, this provision would exclude any liability coverage for the negligent acts of the individual defendants alleged in the wrongful death suit.  The Tennessee Supreme Court in *Watts* defined a "concurrent cause" in various ways as "a concurrent proximate cause"; "an additional cause of the injury"; and "other causal factors play[ing] a substantial role in the injury."[76]  The Court holds that the use of the stun gun, i.e. the "battery" alleged in this case, easily meets any of these definitions of a "concurrent cause."  The complaint contends that both the use of the stun gun, a "battery" as the policy defines the concept, and other acts of negligence were proximate causes of Virginia's injuries and death. It follows then that the use of the stun gun was a concurrent cause of the Virginia's alleged injuries and death.  Therefore, this policy language would also exclude coverage for the other negligent acts of the individual defendants alleged in count I of the wrongful death complaint.

Based on the Court's construction of the assault-and-battery exclusion of the commercial liability insurance at issue here, the Court concludes that the policy excludes coverage for all of the claims alleged in the wrongful death suit against the individual defendants.

---

and intentional actions combined to cause an injury, and hence bar a claim of negligence that fits the definition of the tort of battery."); *Montura Trading Post, Inc. v. Century Sur. Co.*, No. 2:05-cv-378-FtM-29DNF, 2006 WL 1884929, at *5–6 (M.D. Fla. July 7, 2006) (holding that insurer had no duty to defendant against claims of negligence because policy excluded coverage for "any actual or alleged injury aris[ing] out of any combination of an assault or battery-related cause and a non-assault or battery-related cause"); *Century Sur. Co. v. John B., Inc.*, No. 04 C 7997, 2006 WL 140551, at *5–6 (N.D. Ill. Jan. 17, 2006) (holding that insurer had no duty to defend claim for negligent hiring under identical assault-and-battery exclusion).

[76] *Watts*, 811 S.W.2d at 886–88.

### D.  Claims Against Cheyenne Country

The only remaining claims in the underlying suit are those against Cheyenne Country.  The wrongful death suit alleges that Cheyenne Country is vicariously liable for the acts of its agents and employees (count III)[77] and liable for the following acts of negligence (count II): (1) its failure to train its employees in handling persons similarly situated to Virginia;[78] (2) failure to train its employees in using dangerous instrumentalities;[79] (3) failure to act reasonably in hiring, training and retaining the individuals named as defendants in the suit;[80] and (4) failure to promulgate and enforce rules and regulations to ensure its employees and customers were reasonably safe.[81]  As with all of the other claims for negligence, the wrongful death complaint alleges that all of these negligent acts and omissions were the proximate cause of Virginia's death.

The Court holds that based on the same provisions of the assault-and-battery exclusion already discussed, the policy excludes coverage for the negligent acts of Cheyenne Country.  As the Court has already held, the exclusion states in relevant part that the policy does not apply to "any actual or alleged injuries aris[ing] out of any combination of an assault and/or battery-related cause and a non-assault or battery-related cause"[82]  The Court has held the use of the stun gun was a "battery" as the policy defines the term and constitutes an "assault and/or battery-related cause" of

---

[77] Compl., ex. A, ¶¶ 36–38 (D.E. # 1-9).

[78] *Id.* ¶ 35b.

[79] *Id.* ¶ 35c.

[80] *Id.* ¶ 35d.

[81] *Id.*

[82] Compl., ex. B, 43 (D.E. # 1-10).

the alleged injuries and death of Howard Virginia.  All of the acts of negligence attributed to Cheyenne Country meet the policy's broadly-cast definition of a "non-assault or battery-related cause."  Because the policy excludes coverage for injuries caused by a combination of both an "assault and/or battery-related cause" and a "non-assault or battery-related cause," then this provision would exclude coverage for all of the negligence claims against Cheyenne Country.  Likewise, the exclusion for injuries where an "assault and/or battery" is a concurrent cause of injury would also apply to the claims against Cheyenne Country for many of the reasons already discussed.  Therefore, the Court holds that the underlying claims against Cheyenne Country fall under the policy's assault-and-battery exclusion.

In the alternative, the policy excludes coverage for some of the wrongful death suit's claims against Cheyenne Country related to hiring and training.  The relevant language from the assault-and-battery exclusion states that the policy does not apply to injury claims arising out of "the negligent (i) employment; (ii) investigation; (iii) supervision; (iv) training; (v) retention; of a person for whom any insured is or ever was legally responsible and whose conduct would be excluded by (a) or (b) above."  Construing this exclusion narrowly, coverage is not provided for the claims that Cheyenne Country negligently failed to train its employees on using a dangerous instrumentality and failed to act reasonably in hiring, training and retaining the individual defendants named in the underlying complaint.  The Court has already held that the conduct of these individual defendants, particularly their use of the stun gun, is excluded by paragraph (a) of the assault-and-battery exclusion.  It follows that any claim for negligent hiring or training or retention of these defendants is excluded by this paragraph.  Therefore, the specific claims against Cheyenne Country for negligent failure to train in using the stun gun and negligent failure to hire, train, and retain the individual defendants would be

excluded under this provision.

**E. The Expected or Intended Injury Exclusion**

Defendants argue that the policy contains an expected or intended injury exclusion and that an exception to this exclusion applies in this case. In other words, the policy covers the conduct alleged in the wrongful death suit. Defendants rely on language from the expected or intended injury exceptions that states "[t]his exclusion does not apply to 'bodily injury' resulting from the use of reasonable force to protect person or property."[83] According to the deposition testimony of Davis and Mount, they used reasonable force against Howard Virginia for the purpose of defending themselves from Virginia's aggression. Plaintiff responds that Defendants cannot rely on depositions or any other evidence to show that they acted in self-defense. Only the facts pleaded in the wrongful death complaint are relevant to the coverage issue presented in the Motion for Summary Judgment. Plaintiff also points out that the policy language on which Defendants rely was subsequently deleted in an endorsement to the policy. The exclusion now applies simply to "'bodily injury' or 'property damage' expected or intended from the standpoint of any insured."[84] Because the language concerning "the use of reasonable force to protect person or property" is no longer in force, the Court finds Defendants' argument to be without merit.

<u>**CONCLUSION**</u>

Having held that the policy provides coverage for none of the claims of the underlying wrongful death suit, the Court holds that the concurrent cause doctrine does not apply in this case. The policy clearly and unambiguously states, "Where there is no coverage under this policy, there

---

[83] Defs.' Jt. Resp. in Opp'n 8.

[84] Compl., ex. B, 37 (D.E. # 1-10).

is no duty to defend any insured."[85]  The Court concludes, therefore, that Plaintiff has no duty to defend any of the insureds who are named as defendants in the wrongful death suit.   As a result, Plaintiff is entitled to judgment as a matter of law in this action, and Plaintiff's Motion for Summary Judgment is **GRANTED**.  The Court hereby declares and decrees that Plaintiff is relieved of all duties and liabilities by reason of lack of insurance coverage to Defendants Cheyenne Country, Roberts, Davis, McClain, and Mount for the incidents alleged in the underlying complaint. Furthermore, all Defendants, their attorneys, and their agents are prohibited from filing or prosecuting any action against Plaintiff in any court for insurance coverage for the incidents alleged in the underlying complaint.

       **IT IS SO ORDERED.**

                                        **s/ S. Thomas Anderson**
                                        S. THOMAS ANDERSON
                                        UNITED STATES DISTRICT JUDGE

                                        Date: May 9, 2012.

---

[85] *Id.* at 36.